UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANIEL CREGER, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW TUCKER et al., <br><br> Defendants. | Case No. 3:21-cv-00088 <br><br> Chief Judge Waverly D. Crenshaw, Jr. <br> Magistrate Judge Alistair E. Newbern |

## MEMORANDUM ORDER

Plaintiff Daniel Creger brings this action for malicious prosecution under 42 U.S.C. § 1983 against Defendants Smyrna Police Officer Andrew Tucker and the Town of Smyrna, Tennessee. (Doc. No. 38.) Creger alleges that Tucker filed false criminal charges against him for stalking and harassment based events that took place in May and June of 2019. (*Id.*) Creger now moves to compel non-party the Tennessee Department of Children's Services (DCS) to produce records in compliance with a subpoena. (Doc. No. 41.) DCS has appeared in the action to respond in opposition to the motion to compel and has filed its own motion to quash the subpoena, arguing that the records Creger seeks are not relevant to this action and are protected from disclosure under Tennessee Code Annotated §§ 37-1-409, 37-1-612, and 37-5-107. (Doc. No. 42.) For the reasons that follow, Creger's motion to compel (Doc. No. 41) and DCS's motion to quash (Doc. No. 42) will be granted in part and denied in part.

**I.      Relevant Background**

Creger alleges in his first amended complaint that, on May 22, 2019, he and his now-ex-wife E.C. had a disagreement about who would pick up their children K.C. and A.C. from school.

(Doc. No. 38.) Creger and E.C. were in divorce proceedings at the time. (*Id.*) After an exchange of text messages, Creger arrived at K.C.'s school bus stop to pick up K.C. and saw E.C. with K.C. and A.C. in her car. (*Id.*) Creger and E.C. again exchanged text messages, and both drove away in the same direction. (*Id.*) Creger followed E.C.'s car for approximately eight minutes. (*Id.*) E.C. "drove to the Smyrna Police Department, claimed that [Creger] had stalked and harassed her, and asked that criminal charges and an order of protection be filed against him." (*Id.* at PageID# 266.) Tucker took E.C.'s statement and, after speaking with Creger, prepared warrant affidavits to charge Creger with stalking and harassment. (*Id.*) E.C. obtained an order of protection from Creger. (*Id.*) Creger alleges that Tucker's affidavits omitted critical facts and contained false statements. (*Id.*) After the warrants were issued, Creger self-reported on the charges on May 24, 2022, and spent a night in jail before bonding out. (*Id.*)

Creger further alleges that, on June 5, 2019, E.C. reported to Tucker that Creger was stalking her. (*Id.*) Tucker investigated the charge and, on June 6, 2019, filed charges of aggravated stalking and criminal contempt against Creger. (*Id.*) Creger alleges that Tucker's warrant affidavits again include false statements and material omissions. (*Id.*) Creger was taken into custody on the warrant and spent a 12-hour mandatory hold in jail before posting bond. (*Id.*)

On February 5, 2020, the Smyrna Municipal Court dismissed Creger's criminal charges stemming from the May 22, 2019, and June 6, 2019 warrants. (*Id.*) On March 16, 2020, the Smyrna Municipal Court ordered that Creger's criminal record be expunged. (*Id.*) Creger initiated this action on September 13, 2021. (*Id.*) Creger brings malicious prosecution claims against Tucker and the Town of Smyrna under 42 U.S.C. § 1983 alleging that they violated his Fourth and Fourteenth Amendments rights by bringing false charges against him based on the events in May and June 2019 (*Id.*)

Creger then issued a subpoena to DCS seeking production of "all records and recordings pertaining to children [K.C.] and/or [A.C.]." (Doc. No. 41-2, PageID# 318.) DCS timely objected to the subpoena and counsel attempted to resolve the dispute independently. (Doc. No. 41.) When the parties could not reach an agreement, Creger filed a motion to compel production (Doc. No. 41), and DCS filed a motion to quash Creger's subpoena (Doc. No. 42).

## II.     Legal Standard

"[T]he scope of discovery is within the sound discretion of the trial court[.]" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (first alteration in original) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally, Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

Relevant evidence in this context is that which "'has any tendency to make a fact more or less probable than it would be without the evidence,' if 'the fact is of consequence in determining the action.'" *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 485 (M.D. Tenn. 2018) (quoting Fed. R. Evid. 401). The party moving to compel discovery bears the initial burden of proving the relevance of the information sought. *See Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *see also* Fed. R. Civ P. 26(b)(1) advisory committee's note to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

Discovery may be obtained from non-parties, including through the use of a subpoena to produce documents under Rule 45. Fed. R. Civ. P. 45(a)(1)–(3). Rule 45(d)(2)(B) provides that "[a] person commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection to . . . copying . . . any or all of the materials" and that such objection "must be served before the earlier of the time specified for compliance or 14 days after

3

the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "If an objection is made," the party serving the subpoena may, "[a]t any time, on notice to the commanded person, . . . move the court for the district where compliance is required for an order compelling production . . . ." Fed. R. Civ. P. 45(d)(2)(B)(i). "[T]he order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Rule 37(a)(1) also provides that "a party may move for an order compelling . . . discovery," including an order compelling discovery from a nonparty. Fed. R. Civ. P. 37(a)(1); *see also* Fed. R. Civ. P. 37(a)(2) ("A motion for an order to [compel discovery from] a nonparty must be made in the court where the discovery is or will be taken."); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 468 (6th Cir. 2006) (holding that "the Federal Rules provide that a motion to compel discovery or disclosure by a nonparty must be made to the court in the district where the discovery is being taken").

Federal Rule of Civil Procedure 45(d) provides that, when presented with a timely motion, a court "must quash or modify a subpoena that[,]" among other grounds, "requires disclosure of privileged or other protected matter, if no exception or waiver applies . . . ." Fed. R. Civ. P. 45(d)(3)(A)(iii). The party moving to quash a subpoena bears the burden of proof. *See In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013).

III. Analysis

Creger and DCS's motions hinge on two points of disagreement: (1) whether the information Creger seeks from DCS is relevant, and (2) whether the records are protected from disclosure by the statutory privilege established by Tenn. Code Ann. §§ 37-1-409, 37-1-612, and 37-5-107. The Court considers the arguments made in the parties' motions together.

## A.     Application of DCS's State-Law Privilege in a Section 1983 Action

Creger states that the subpoenaed DCS records are relevant to his claims "because discovery provided by Defendant Smyrna indicates that Defendant Tucker made a DCS referral against [Creger] based on the allegations involved in the May 22, 2019 charges." (Doc. No. 41, PageID# 310–311.) Creger provides the reporting officer narrative completed by Tucker on May 22, 2019, which concludes: "A DCS referral was submitted as well due to the harassing and stalking while the children were in the car." (Doc. No. 41-3, PageID# 326.) DCS responds that the requested records are privileged under Tennessee law that prohibits the disclosure of DCS records except in limited circumstances and that this privileged information need not be disclosed. (Doc. No. 43.) Creger argues that his interest in discovering information relevant to his federal civil rights claims outweighs DCS's claim of privilege and that any confidentiality concerns can be addressed by a proposed protective order. (Doc. Nos. 41, 45.)

"[A]ll 50 states and the District of Columbia have statutes that protect the confidentiality of their official records concerning child abuse." *Pennsylvania v. Ritchie*, 480 U.S. 39, 61 n.17 (1987). Tennessee has codified a privilege that protects DCS records regarding reports and investigations of alleged child abuse from disclosure. Specifically, Tennessee Code Annotated § 37-1-409(b) establishes that

> it is unlawful for any person . . . to disclose, receive, [or] make use of . . . the name of, or any information concerning, persons receiving services [from DCS], or any information concerning a report or investigation of a report of harm . . . directly or indirectly derived from the records, papers, files or communications of the department or divisions thereof acquired in the course of the performance of official duties.

Tenn. Code Ann. § 37-1-409(b).

The statute further provides that DCS "may confirm whether a child abuse or neglect investigation has been commenced, but may not divulge . . . any details about the case, including,

but not limited to, the name of the reporter, the alleged victim, or the alleged perpetrator," subject to certain exceptions. Tenn. Code Ann. § 37-1-409(d). Federal Rule of Evidence 501 addresses the application of a state-law privilege in federal court, establishing that "[t]he common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court." Fed. R. Evid. 501.

Applying Rule 501 to DCS's records privilege in the context of a Section 1983 action, this Court found that, "[i]n federal civil rights actions, most courts that have taken up the issue of state privileges have concluded that state law must yield to the federal interest in full disclosure of all facts bearing upon the denial of federally guaranteed rights." *Farley v. Farley*, 952 F. Supp. 1232, 1236 (M.D. Tenn. 1997). "Because the [federal] civil rights laws are in part designed to protect individuals against illegal state action, it would be anomalous to permit state law privileges to interfere with their enforcement." *Id.* (quoting *Burka v. New York City Transit Authority*, 110 F.R.D. 660, 666 (S.D.N.Y.1986)). The Court found, however, that "the public policy of the state of Tennessee . . . that the privacy of families afflicted by child abuse should be protected and the identity of those who report child abuse should remain confidential" was "particularly strong." *Id.* Thus, courts faced with requests for disclosure of DCS records thus "must strike a balance between Plaintiff's ability to prosecute her civil rights claim and the state's interest in ensuring that child abuse is reported, investigated, and resolved without undue fear of retribution or recrimination." *Id.* And courts must do so in a way that "ensure[s] vindication of the paramount federal interest with as minimal an intrusion on the state interests as is consistent with [a] federal claim." *Id.* at 1237.

The *Farley* court identified five factors that inform this balancing:

> (1) The likelihood that disclosure of confidential information will discourage citizens from giving the government information; (2) the extent to which disclosure will thwart or undercut significant regulatory processes; (3) the extent to which state authorities have already waived the privilege that they assert; (4) the federal policies prioritizing and facilitating full development of the facts in federal litigation; and (5) the plaintiff's need for disclosure.

*Id.* at 1237–38.

Applying these factors, this Court has generally ordered the production of DCS records in federal civil rights actions. *See Mills v. Barnard*, No. 1:14-cv-150, 2016 WL 4466630 (M.D. Tenn. Aug. 24, 2016) (granting motion to compel production of investigative records, including DCS records, where plaintiff demonstrated relevance to establishing defendants' knowledge in wrongful conviction suit for sex crimes against minor); *Grummons v. Williamson Cnty. Bd. of Educ.,* Civ. No. 3:13-cv-01076, 2014 WL 1491092 (M.D. Tenn. Apr. 15, 2014) (granting plaintiffs' motion to compel production of DCS records in action alleging that defendant retaliated against plaintiffs by reporting them to DCS); *John B. v. Goetz*, 879 F. Supp. 2d 787 (M.D. Tenn. 2010) (granting motion to compel production of DCS files where minor plaintiffs demonstrated need to validate statistical data in their class action against DCS); *Farley*, 952 F. Supp. at 1244 (modifying protective order to broaden disclosure of plaintiff's already-produced DCS case file in action alleging that plaintiff's husband conspired with DCS to remove children from plaintiff's custody). The *Farley* test directs that disclosure is also appropriate in this case.

The likelihood that producing the DCS records will discourage citizens from reporting child abuse is mitigated by the protective order proposed by Creger (Doc. No. 41-1) that will treat the records as confidential and limit their disclosure within this case. Similar protective orders have been found to adequately address the first *Farley* factor in other cases. *See Mills*, 2016 WL 4466630, at *3 (finding protective order adequately addressed possible "chilling effect" associated with production in first *Farley* factor); *Grummons*, 2014 WL 1491092, at *3 (authorizing

production subject to protective order limiting disclosure to use in the litigation and "dissemination to persons having a good faith need to know"); *John B.*, 879 F. Supp. 2d 787 at 903 (finding that "appropriate protective order" would address possible harm identified in *Farley* test). This factor weighs in favor of disclosure.

As for the second factor— the extent to which disclosure will thwart or undercut significant regulatory processes—the *Farley* court found that, "[w]ithout question, the investigation and resolution of incidents of child abuse is one of the most important regulatory objectives that a state may undertake." *Farley*, 952 F. Supp. at 1240. It further found, however, that "[t]he confidentiality granted child abuse records under Tennessee law may not be invoked as a shield with which to block scrutiny of governmental practices." *Id.* Instead, "[t]he federal courts have repeatedly held that the interest in ensuring governmental compliance with federally-guaranteed civil rights is paramount to the state interest in confidentiality." *Id.* DCS argues, without authority, that the paramount interest identified in *Farley* is invoked only when DCS itself or "various state employees and entities" are defendants to the federal civil rights action. (Doc. No. 43, PageID# 342.) But *Farley* refers to "ensuring governmental compliance" without such limitation and finds that plaintiffs "should be assisted in discharging this function by the broad discovery mandate of federal law." *Farley*, 952 F. Supp. at 1240; *see also Grummons*, 2014 WL 1491092, at *3 (finding that, "in an action alleging violation of constitutional rights by an employee or agent of *a governmental agency*, the state interests in confidentiality of child abuse or neglect investigations must yield to the federal interests in security evidence in federal civil rights litigation") (emphasis added). *But see Hart ex rel. Hart v. Paint Valley Loc. Sch. Dist.*, No. C-2-01-4, 2001 WL 1681140 (S.D. Ohio Oct. 17, 2001) (granting motion to quash subpoena for child services records in action against school district when child services agency was not party, its

investigations were not at issue, and plaintiffs failed to explain need for records). Further, to the extent this factor asks courts to assess whether production of records would "interfere[] with or hamper[] the conduct of investigations by agency officials," that concern is lessened in this context because Creger requests the records to challenge Tucker's actions, not DCS's investigation. *Farley*, 952 F. Supp. at 1240. This factor weighs in favor of disclosure.

DCS has not waived—and actively asserts—its privilege to maintain the confidentiality of these records. This factor weighs against disclosure.

The federal policies prioritizing full development of the facts underlying Creger's Section 1983 action addressed by the fourth factor were articulated in *Farley* as follows:

> Without full and fair disclosure of relevant proof, the public is likely to lose confidence in the administration of justice by the federal courts. It is therefore of paramount importance that litigants be accorded the authority to seek out relevant evidence that they have been granted by the federal rules. This is particularly true in federal civil rights actions where the vindication of constitutional rights is often at stake.

*Id.* at 1239.

Here, Creger alleges that Tucker and the Town of Smyrna violated his Fourth and Fourteenth Amendment rights by issuing criminal charges against him based upon Tucker's false statements. (Doc. No. 38.) He asks for the DCS records to develop the factual record underlying these claims. This factor weighs in favor of disclosure.

DCS argues that the fifth factor weighs against disclosure because Creger's request is overbroad and because Creger has not shown how the records are relevant to his malicious prosecution claims. (Doc. No. 43.) DCS argues that Creger "never asserts that Defendants relied upon any information from DCS to bring those charges or that Defendant Tucker's alleged report had any bearing on whether criminal charges would be brought against [Creger]." (*Id.* at PageID# 337.) To succeed on his malicious prosecution claims against Tucker, Creger must prove

9
Case 3:21-cv-00088   Document 64   Filed 09/26/22   Page 9 of 13 PageID #: 415

that (1) a criminal prosecution was initiated against him; (2) Tucker made, influenced, or participated in the decision to prosecute; (3) there was a lack of probable cause for the prosecution; (4) Creger suffered a deprivation of liberty as the result of a legal proceeding other than the initial seizure; and (5) the criminal proceeding resolved in Creger's favor. *See Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017). Creger states that the DCS records are relevant to his claims because they "directly relate to Defendant Tucker's role in falsely charging him with criminal offenses for the May 22, 2019 incident" and will contain "Tucker's statements in connection with his referral" and "records regarding whether DCS ultimately considered the referral to be a founded or unfounded report of child abuse." (Doc. No. 41, PageID# 313.) Creger also argues that "any witness statements given by [E.C., K.C., and A.C.] during DCS's investigation about the events underlying this lawsuit would certainly be relevant" to his claims. (Doc. No. 45, PageID# 350.) Tucker's May 22, 2019 reporting officer narrative shows that he made a DCS referral as part of the investigation of the charges he ultimately filed against Creger "due to the harassing and stalking while the children were in the car." (Doc. No. 41-3, PageID# 326.) Tucker's statements made in the referral are thus relevant to Creger's argument that Tucker made false or misleading statements to establish probable cause in the affidavit he wrote in support of the May 22, 2019 stalking and harassment charges against Creger. This factor weighs in favor of disclosure.

Considering these factors together, the Court finds that DCS's interest in the confidentiality of its records is secondary to Creger's interest in prosecuting his federal civil rights claims with the full scope of relevant discovery afforded by the Federal Rules of Civil Procedure. The Court will order that DCS produce its records that are relevant to Creger's claims. However, recognizing the importance of the state's interests reflected in the statutory privilege, the Court will limit the

10
Case 3:21-cv-00088   Document 64   Filed 09/26/22   Page 10 of 13 PageID #: 416

scope of the requested production and require that production is made subject to the terms of a protective order.

### B. Protective Order

Creger proposes that the production of DCS's records be made subject to a protective order that restricts the disclosure of their contents to the parties, their counsel, and others associated with the litigation; restricts use of the records to the preparation and trial of this case; and requires DCS to redact all identifying information of any reporters and victims other than Tucker, K.C., and A.C. (Doc. No. 41-1.) DCS agrees to the terms Creger proposes generally, but argues that it must be able to redact "any identifying information regarding any reporter(s) of harm, as such information is given the highest protection under Tennessee law and should not be relevant to a civil proceeding." (Doc. No. 43, PageID# 343–344.) DCS also asks to redact "any minor child's identifying information who is not subject to this subpoena, as no one has asserted that any other children's information would be relevant to this litigation." (*Id.* at PageID# 344.)

This Court has generally ordered that the identity of those reporting alleged child abuse be redacted from produce DCS records. *See Mills*, 2016 WL 4466630, at *3 (finding that "any risk of a chilling effect from the disclosure of . . . DCS records will be minimized by redacting the identifying information of the reporter or reporters and by disclosing these records subject to the parties' protective order"); *Farley*, 952 F. Supp. at 1240 (finding that "redaction of identifying information is a proper and sufficient means of furthering the public policy of Tennessee by protecting the anonymity of those who report child abuse"). *But see Grummons*, 2014 WL 1491092, at *3 (approving protective order that did not address redacting identifying information). The Court recognizes the importance of requiring such redaction in the great majority of cases to ensure that members of the public are not dissuaded from reporting child abuse or neglect. This case, however, offers the unique context that Tucker has already disclosed in a public record that

11
Case 3:21-cv-00088   Document 64   Filed 09/26/22   Page 11 of 13 PageID #: 417

he made a report to DCS on May 22, 2019, as part of his law enforcement duties.[1] In this limited circumstance, the Court finds that production of the files without redacting Tucker's name is appropriate. The identifying information of any other reporters and any minors not subject to the subpoena shall be redacted.

Further, the Court agrees with DCS that the scope of Creger's subpoena is overbroad. Creger requests production of "all records and recordings pertaining to children [K.C. and/or A.C.]." (Doc. No. 41-2, PageID# 318.) But only reports made by Tucker are relevant to Creger's malicious prosecution claim. Thus, the Court limits the scope of Creger's subpoena to "all records related to reports made to DCS by Smyrna Police Officer Andrew Tucker pertaining to children K.C. and/or A.C."[2]

Production of these records shall be made subject to the protective order proposed by Creger (Doc. No. 41-1). Creger shall file a protective order to be entered by the Court and including terms to be signed by any person to whom the produced records are disclosed.

---

[1] The Court notes that Creger's criminal record has been expunged, which is reflected in the police report he has filed in support of his motion. (Doc. No. 41-3.)

[2] While the Court refers to the minor children by their initials, DCS should respond to the subpoena as if its directive identified the children by their full names.

## IV. Conclusion

For these reasons, Creger's motion to compel production of DCS records pursuant to a subpoena (Doc. No. 41) and DCS's motion to quash that subpoena (Doc. No. 42) are GRANTED IN PART AND DENIED IN PART as set out in this Order. Creger is ORDERED to file the protective order proposed in his motion and amended in compliance with this Order no later than October 3, 2022. DCS shall produce the identified records subject to the terms of that protective order no later than October 10, 2022.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge